PETER KRISTOFER STROJNIK, AZ Bar No. 026082
strojnik@skplaw.com
**THE STROJNIK FIRM  LLC**
**A LIMITED LIABILITY COMPANY**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:   (602) 773-0370

Attorneys for Plaintiff THERESA BROOKE

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| PV SCOTTSDALE HOTEL OWNER SPE, LLC, a Delaware limited liability company dba Andaz Scottsdale Resort & Spa, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiff alleges:

## **PARTIES**

1. Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51,

1  52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a
2  wheelchair due to the loss of a leg.

3      2.    Defendant, PV Scottsdale Hotel Owner SPE, LLC, owns and/or operates
4  and does business as the hotel, Andaz Scottsdale Resort & Spa located at 6114 North
5  Scottsdale Road, Scottsdale, Arizona 85253. Defendant's hotel is a public
6  accommodation pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging
7  services.

## INTRODUCTION

9      3.    Plaintiff Theresa Brooke brings this action against Defendant, alleging
10 violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et
11 seq., (the "ADA") and its implementing regulations.

12     4.    Plaintiff is a disabled woman confined to a wheelchair. She brings this
13 civil rights action against Defendant for failing to design, construct, and/or own or
14 operate hotel facilities that are fully accessible to, and independently usable by, disabled
15 people. Specifically, Defendant's hotel, which is a place of public accommodation, has
16 barriers to use of the swimming pool facilities. Defendant's swimming pool facilities do
17 not have acceptable means of entry for disabled persons, notwithstanding that such
18 modifications are readily achievable. Therefore, Plaintiff seeks a declaration that
19 Defendant's hotel violates federal law and an injunction requiring Defendant to install
20 means of access in compliance with ADA requirements so that the swimming pool
21 facilities are fully accessible to, and independently usable by, disabled individuals.
22 Plaintiff further requests that, given Defendant's historical failure to comply with the
23 ADA's mandate, the Court retain jurisdiction of this matter for a period to be
24 determined to ensure that Defendant comes into compliance with the relevant
25 requirements of the ADA, and to ensure that Defendant has adopted and is following an
26 institutional policy that will, in fact, cause Defendant to remain in compliance with the
27 law.

5. In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona 85016.

## JURISDICTION AND VENUE

6. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188.

7. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

9. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

10. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

11. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

12. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.

13. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.

1   14. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local governmental entities, as well as individuals with disabilities.

15. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

16. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

17. On September 30, 2004, the DOJ issued an advanced notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

18. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

19. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[1]

20. Notably, the lodging industry requested and received a number of extensions of time before the mandatory requirements of Section 242.2 of the 2010 Standards, concerning access to pools, became effective. Notwithstanding, the industry remains largely noncompliant with the requirements.

---

[1] Though the Effective Date of the 2010 Standards was March 15, 2011, the deadline for existing pools to comply did not become effective until January 31, 2013, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

4

**ALLEGATIONS COMMON TO ALL COUNTS**

21. On April 8, 2017, Plaintiff and her husband visited the Andaz Scottsdale for a gathering of friends, one of which was a registered guest of the Andaz. During the gathering, Plaintiff attempted to access the Jacuzzi at the Andaz. She could not access the Jacuzzi because it did not have an ADA-compliant lift or other accessible means of access for a disabled woman in a wheelchair.

22. Plaintiff's agent, an expert in ADA accessibility guidelines, as part of Plaintiff's due diligence requirements thereafter visited the Andaz to ensure that it is readily achievable to install access or a lift at the Jacuzzi and determined that it is.

23. Plaintiff has personal knowledge of a barrier related to her disability, that is, the swimming pool facilities at Defendant's hotel are inaccessible to her by virtue of her confinement to a wheel chair, and is currently deterred from visiting Defendant's accommodation by this accessibility barrier. Therefore, she has suffered an injury-in-fact for the purpose of her standing to bring this action.

24. Other potential violations and barriers to entry may be discovered through the discovery process, which, if discovered, Plaintiff shall seek to allege further ADA, Unruh and DPA violations. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008) (plaintiff need only allege one instance of ADA violation to achieve standing, but is permitted to then challenge other ADA violations found in the course of discovery).

25. Without the presence of a fixed pool lift or other means of permitting Plaintiff equal access to Defendant's pool facilities, Plaintiff's disability prevents her from equal enjoyment as able-bodied persons have.

26. Plaintiff has frequented the Scottsdale/Phoenix area in the past and intends to travel there again in the near future for business and pleasure.

27. As a result of Defendant's non-compliance with the ADA, Plaintiff will not lodge at the Defendant's place of accommodation in the future for planned trips. However, if Plaintiff receives notice that Defendant removes the barriers, Plaintiff will lodge at Defendant's hotel.

1    28.    The existence of barriers to use the swimming pool facilities at
2 Defendant's hotel deterred Plaintiff from returning to Defendant's hotel. Upon
3 information and belief, other disabled persons were deterred from staying there or
4 otherwise precluded from using the swimming pool facilities as guests due to the
5 absence of pool lifts.
6    29.    As a result of Defendant's non-compliance with the ADA, Plaintiff,
7 unlike persons without disabilities, cannot independently use Defendant's swimming
8 pool facilities.
9    30.    In violation of Section 242.2 of the 2010 ADA Standards, Defendant's
10 swimming pool facilities have at least one barrier to entry.
11    31.    Plaintiff wants to stay in Defendant's hotel for future trips to
12 Scottsdale/Phoenix because of its unique layout and peaceful character. But for the
13 presence of architectural barriers at Defendant's hotel, Plaintiff would lodge at the
14 Defendant's hotel, and in fact she will lodge at Defendant's hotel if and when the
15 barriers are removed.
16    32.    Upon information and belief, though Defendant has centralized policies
17 regarding the management and operation of its hotel, Defendant does not have a plan or
18 policy that is reasonably calculated to make its entire hotel fully accessible to and
19 independently usable by, disabled people.
20    33.    Plaintiff verified that Defendant's hotel lacks the mandatory elements
21 required by the 2010 Standards to make its pool facilities fully accessible to and
22 independently usable by disabled people.
23    34.    As a disabled person, Plaintiff has a keen interest in whether public
24 accommodations that offer public lodging services are fully accessible to, and
25 independently usable by, the disabled, specifically including an interest in ensuring that
26 pools and spas possess all of the features required by the 2010 Standards.
27
28

35. Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to ascertain whether it remains in violation of the ADA. If the above barrier is removed, Plaintiff will lodge with Defendant.

36. Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's pool facilities.

37. Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel swimming pool facilities in violation of her rights under the ADA.

**FIRST CAUSE OF ACTION**
**(Violation of Title III the Americans with Disabilities Act)**

38. Plaintiff incorporates all allegations heretofore set forth.

39. Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and Section 242.2 of the 2010 Standards, as described above.

40. Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and Section 242.2 of the 2010 Standards, as described above. Compliance with the requirements of section 242.2 of the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

41. In violation of Section 242.2 of the 2010 Standards, Defendant's swimming pool and/or spa as described above do not have at least one accessible means of entry complying with Sections 1009.2 or 1009.3.

42. Pursuant to Section 44 of the IRS Code, Defendant may be able to obtain a tax credit and tax deduction where it complies with the ADA. *See generally* Dep't of

7

1 Justice, *Questions and Answers: Accessibility Requirements for Existing Swimming Pools at Hotels and Other Public Accommodations* (Mar. 1, 2013)[2]. The tax credit is available to businesses that have total revenues of $1,000.000 or less in the previous tax year or 30 or fewer full-time employees. This credit can cover 50% of the eligible access expenditures in a year up to $10,250 (maximum credit of $5,000).The tax credit can be used to offset the cost of undertaking barrier removal and alterations to improve accessibility. The tax deduction can be claimed for expenses incurred in barrier removal and alterations. *Id*.

43. Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and Section 242.2 of the 2010 Standards, as described above, is readily achievable by the Defendant due to the low costs of installing a fixed pool lift or lifts. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

44. Conversely, the cessation of compliance with the ADA law is also readily achievable by the removal of a fixed lift. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[3].

---

[2] http://www.ada.gov/qa_existingpools titleiii.htm

[3] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

8

45. Defendant's conduct is ongoing, and, given that Defendant has never fully complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

46. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its pool facilities be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that all of its pools were fully accessible to, and independently usable by, disabled individuals;

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its pools into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the pools are fully accessible to, and independently usable by, disabled individuals, specifically including a pool lift as required by Sections 242.2 and 1009.2 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its pool is fully in compliance with the relevant requirements of the ADA to

9

|   |   |
|---|---|
| 1 | ensure that Defendant has adopted and is following an institutional policy |
| 2 | that will in fact cause Defendant to remain fully in compliance with the |
| 3 | law; |

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4]; and,

e. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this 23rd day of April, 2017.

**THE STROJNIK FIRM L.L.C.**



Peter Kristofer Strojnik (242728)
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Attorneys for Plaintiff

---

[4] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

10

**VERIFICATION COMPLIANT WITH R10-3-405**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 23rd day of May, 2017.

_____
Theresa Brooke